1  Nelson L. Atkins (SBN 036752)
   nelson_atkins@gshllp.com
2  Kenneth M. Jones (SBN 140358)
   kenneth_jones@gshllp.com
3  GONZALEZ SAGGIO & HARLAN LLP
   3699 Wilshire Boulevard, Suite 890
4  Los Angeles, California 90010
   Telephone:  (213) 487-1400
5  Facsimile:  (213) 487-1404

6  Steven A. Zalesin (admitted *pro hac vice*)
   sazalesin@pbwt.com
7  Travis J. Tu (admitted *pro hac vice*)
   tjtu@pbwt.com
8  PATTERSON BELKNAP WEBB & TYLER LLP
   1133 Avenue of the Americas
9  New York, New York 10036
   Telephone:  (212) 336-2000
10 Facsimile:  (212) 336-2222

11 Attorneys for Defendant
   THE COCA-COLA COMPANY

12

13            UNITED STATES DISTRICT COURT
              CENTRAL DISTRICT OF CALIFORNIA
14

15

16 NILOOFAR SAEIDIAN, on Behalf of          CASE NO.  09-cv-06309 SJO-FMO
   Herself and All Others Similarly
17 Situated,                                **PUTATIVE CLASS ACTION**

18              Plaintiff,                   **MEMORANDUM OF POINTS AND
                                            AUTHORITIES IN OPPOSITION
19                                          TO PLAINTIFF'S MOTION FOR
   v.                                       CLASS CERTIFICATION**
20
                                            [Declaration of Steven A. Zalesin filed
21 THE COCA COLA COMPANY,                   concurrently herewith]

22

23              Defendant.                  Judge:    Honorable S. James Otero
                                            Date:     May 17, 2010
24                                          Time:     10:00 a.m.
                                            Room:     Courtroom 1, 2nd Floor
25

26

27

28
                                            DEF. MEM. OF POINTS AND AUTHORITIES
                                            CV09-06309 SJO-FMO

3885188v.1

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ............................................................................ 1

STATEMENT OF FACTS ................................................................................ 2

    A.    TCCC's Juice.................................................................................. 2

    B.    Regulations Governing Flavored Juice Blends................................ 3

    C.    The Juice's Name and Label .......................................................... 4

    D.    TCCC's Advertising and Marketing of the Juice............................ 4

    E.    Saeidian's Claims and Related Litigation........................................ 5

STANDARD FOR CLASS CERTIFICATION .................................................. 7

ARGUMENT .................................................................................................... 7

I.    THE ONLY CLAIM SAEIDIAN CAN ASSERT IS PREEMPTED........... 8

    A.    Saeidian Lacks Standing To Sue With Respect to Any Claim Not Based on the Juice's Name or Label.......................................... 8

    B.    Saeidian's Name and Label Claims Are Preempted ....................... 10

II.    SAEIDIAN HAS NOT SHOWN THAT A CLASS ACTION CAN BE MAINTAINED HERE ........................................................................ 11

    A.    Article III Prohibits Certifying an Overbroad Class Including Individuals Who Suffered No Injury ............................................. 12

    B.    The Putative Class Is Impermissibly Overbroad............................ 13

        1.    The Pom Survey .................................................................. 14

        2.    The Dunn Action ................................................................ 15

        3.    Saeidian's Testimony........................................................... 15

    C.    The Basic Requirements of Rule 23 Are Not Met .......................... 17

    D.    State Law Also Precludes Certifying the Class ............................... 18

CONCLUSION ............................................................................................... 20

DEF. MEM. OF POINTS AND AUTHORITIES
CV09-06309 SJO-FMO

3885188v.1

1

## TABLE OF AUTHORITIES

2

**Page(s)**

3

### FEDERAL CASES

4

Bates v. United Parcel Serv., Inc.,
  511 F.3d 974 (9th Cir. 2007)....................................................13

Bishop v. Saab Automobile A.B.,
  No. CV 95-0721 JGD, 1996 WL 33150020
  (C.D. Cal. Feb. 16, 1996) ........................................................13

Blackie v. Barrack,
  524 F.2d 891 (9th Cir. 1975) .....................................................7

Burdick v. Union Sec. Ins. Co.,
  No. CV 07-4028 ABC, 2009 WL 4798873
  (C.D. Cal. Dec. 9, 2009) .............................................. 12, 13, 16

Denney v. Deutsche Bank AG,
  443 F.3d 253 (2d Cir. 2006)........................................... 12, 16

Easter v. Am. West Fin.,
  381 F.3d 948 (9th Cir. 2004).....................................................13

Hangarter v. Provident Life & Accident Ins. Co.,
  373 F.3d 998 (9th Cir. 2004).....................................................12

Hanon v. Dataproducts Corp.,
  976 F.2d 497 (9th Cir. 1992).....................................................17

Hodes v. Van's Int'l Foods,
  No. CV-09-01530 RGK, 2009 WL 2424214
  (C.D. Cal. July 7, 2009) ..........................................................18

Lee v. Am. Nat'l Ins. Co.,
  260 F.3d 997 (9th Cir. 2001).......................................... 9, 12, 17

Mattel, Inc. v. MCA Records, Inc.,
  28 F. Supp. 2d 1120 (C.D. Cal. 1998) ....................................16

Narouz v. Charter Communications, LLC,
  591 F.3d 1261 (9th Cir. 2010).....................................................7

Ortiz v. Fibreboard Corp.,
  527 U.S. 815, 119 S. Ct. 2295 (1999) ....................................13

Pom Wonderful LLC v. The Coca-Cola Company,
  No. CV 08-06237 SJO (JTLx) [Dkt. # 25],
  (C.D. Cal. Feb. 10, 2009)........................................................10

5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

- ii -

3885188v.1

**TABLE OF AUTHORITIES**
**(continued)**

Page(s)

Pom Wonderful LLC v. Ocean Spray Cranberries, Inc.,
  642 F. Supp. 2d 1112 (C.D. Cal. 2009) .............................................10, 11

Sanders v. Apple Inc.,
  672 F. Supp. 2d 978 (N.D. Cal. 2009).........................................12, 16, 18

Summers v. Earth Island Inst.,
  129 S. Ct. 1142 (2009)..................................................................................8

Weiner v. Dannon Co., Inc.,
  255 F.R.D. 658 (C.D. Cal. 2009) ...............................................................14

Zinser v. Accufix Research Institute, Inc.,
  253 F.3d 1180 (9th Cir. 2001)......................................................................7

**STATE CASES**

Ali v. U.S.A. Cab Ltd.,
  176 Cal. App. 4th 1333, 98 Cal. Rptr. 3d 468
  (Cal. Ct. App. 4th 2009)..............................................................................20

Caro v. Procter v. Gamble Co.,
  18 Cal. App. 4th 644, 22 Cal. Rptr. 2d 419
  (Cal. Ct. App. 4th 1993)..............................................................................18

Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.,
  20 Cal. 4th 163, 83 Cal. Rptr. 2d 548 (1999)...........................................11

Cohen v. DirecTV, Inc.,
  178 Cal. App. 4th 966, 101 Cal. Rptr. 3d 37
  (Cal. Ct. App. 2d 2009)........................................................................18, 19

Kaldenbach v. Mutual Omaha Life Ins. Co.,
  178 Cal. App. 4th 830, 100 Cal. Rptr. 3d 637
  (Cal. App. 4th 2009) ...................................................................................18

Kanter v. Warner-Lambert Co.,
  99 Cal. App. 4th 780, 122 Cal. Rptr. 72
  (Cal. Ct. App. 1st 2002) .............................................................................10

Lavie v. Proctor & Gamble Co.,
  105 Cal. App. 4th 496, 129 Cal. Rptr. 2d 486
  (Cal. Ct. App. 4th 2003)..............................................................................16

McAdams v. Monier, Inc.,
  182 Cal. App. 4th 174, 105 Cal. Rptr. 3d 704
  (Cal. Ct. App. 3d 2010)...............................................................................19

3885188v.1

# TABLE OF AUTHORITIES
## (continued)

Page(s)

McKell v. Wash. Mut., Inc.,
142 Cal. App. 4th 1457, 49 Cal. Rptr. 3d 227
(Cal. Ct. App. 2d 2006).................................................................11

Pfizer Inc. v. Superior Court,
182 Cal. App. 4th 622, 105 Cal. Rptr. 3d 795
(Cal. Ct. App. 2d 2010)........................................ 9, 10, 11, 19

In re Tobacco II Cases,
46 Cal. 4th 298, 93 Cal. Rptr. 3d 559 (2009)...........................9

In re Vioxx Class Cases,
180 Cal. App. 4th 116, 103 Cal. Rptr. 3d 83 (Cal. Ct. App. 2d
2009) ....................................................................... 12, 19, 20

# STATUTES AND REGULATIONS

21 C.F.R. § 101.22(i)(1)(i) (2009)...................................................3

21 C.F.R. § 102.33(c) (2009) ..........................................................3

21 C.F.R. § 102.33(d)(1) (2009) .....................................................3

21 U.S.C. § 343-1(a) .....................................................................10

Cal. Bus. & Prof. Code § 17203 .....................................................9

Cal. Bus. & Prof. Code § 17204 .....................................................9

Cal. Bus. & Prof. Code § 17535 .....................................................9

Fed. R. Civ. P. 23(a)(3).................................................................17

Fed. R. Civ. P. 23(b)(3).................................................................17

# OTHER

2004 Cal. Legis. Serv. Prop. 64 §(1) ...............................................9

56 Fed. Reg. 30452 .........................................................................3

58 Fed. Reg. 2897 ........................................................................3, 4

Food Labeling, Declaration of Ingredients, Common or Usual Name
for Nonstandardized Foods, Diluted Juice Beverages, 56 Fed. Reg.
30452-01 (July 2, 1991)..................................................................3

DEF. MEM. OF POINTS AND AUTHORITIES
CV09-06309 SJO-FMO

3885188v.1

1

**PRELIMINARY STATEMENT**

2  Plaintiff Niloofar Saeidian seeks to certify a class of all California purchasers

3  of The Coca-Cola Company's ("TCCC's") "Minute Maid Enhanced Pomegranate

4  Blueberry Flavored Blend of 5 Juices" (the "Juice") based on the theory that the

5  Juice's name and the fruit vignette on its label – elements of its packaging that fully

6  complied with detailed regulations established by the U.S. Food & Drug

7  Administration ("FDA") – convey the false message that the Juice is made

8  primarily of pomegranate and blueberry juice.  Although she refers to other

9  advertising in her Complaint and motion for class certification, her testimony

10  confirms that the only advertising she relied on, and thus the only advertising with

11  respect to which she has standing to assert a claim, is the Juice's name and label.

12  Any such claim, however, is preempted by federal law and protected by

13  California's safe harbor doctrine, and must therefore be dismissed.  Because

14  Saeidian has no viable cause of action, her Complaint should be dismissed in its

15  entirety, and her motion for class certification denied as moot.[1]

16  If the Court were to consider the merits of Saeidian's class certification

17  motion, it should deny class certification because there is no basis to conclude that a

18  significant number of putative class members actually suffered the same alleged

19  injury.  This is not a case where a single uniform, material, facially false statement

20  was made to each class member.  It is a case where the advertising elements that

21  allegedly misled Saeidian are the very elements that the U.S. Food and Drug

22  Administration ("FDA") – the agency charged with avoiding consumer confusion

23  in the area of juice labeling – has concluded will ***not*** mislead consumers.  Saeidian

24  has not offered any basis for the Court to find that, contrary to FDA's expectations,

25

26

_____

27  [1] TCCC has separately moved for judgment on the pleadings under Rule

28  12(c) on the ground that Saeidian's claims are preempted.

DEF. MEM. OF POINTS AND AUTHORITIES
CV09-06309 SJO-FMO

3885188v.1

1    a significant number of putative class members were actually misled by TCCC's
2    advertising.

3         The evidence does, however, support the conclusion that the proposed class
4    includes individuals who were ***not*** misled, and were ***not*** injured.  Saeidian's motion
5    for class certification therefore fails for two reasons.  First, the class cannot be
6    certified due to class members' lack of Article III standing.  Second, the putative
7    class also cannot be certified under state law principles.  There are at least two
8    conditions for maintaining a class action under California's Unfair Competition
9    Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200 *et seq.*, and California's False
10   Advertising Law ("FAL"), *id.* §§ 17500 *et seq.*:  (1) all class members must have
11   been exposed to the same false claim, and (2) all class members must be entitled to
12   a measurable amount of restitution.  Neither is true here.  Therefore, even if the
13   Court does not dismiss this action in its entirety, it should not certify a class.

## STATEMENT OF FACTS

### A.    TCCC's Juice

16        In September 2007, TCCC launched a new product in its "Minute Maid
17   Enhanced Juice" line called "Pomegranate Blueberry Flavored Blend of 5 Juices"
18   (the "Juice").  Schmidt Decl. ¶ 2.  Products in the "Enhanced" juice line are
19   fortified with a variety of nutrients that provide benefits in different areas such as
20   brain development, heart health, and energy.  *Id.*  The Juice is fortified with five
21   nutrients that contribute to brain development:  Omega-3/DHA, choline, vitamin B-
22   12, vitamin E, and vitamin C.  *Id.*  None of these added nutrients are found
23   naturally in pomegranate juice.  *Id.*

24        The Juice is one of many flavored juice blends on the market.  *Id.* ¶ 3.  While
25   consumers are interested in flavors such as berry, mango or pomegranate, products
26   made entirely from these juices are too expensive, or their taste too overpowering,
27   for many consumers.  *Id.*  Therefore, to cater to mainstream consumers,
28   manufacturers create flavored juice blends that combine the desired flavors with

- 2 -

3885188v.1

1  less expensive juices such as apple, grape or pear juice.  *Id.*  Examples of similar

2  flavored juice blends include Dole Orange Peach Mango Flavored Blend of 5 Juices

3  (primarily apple juice), Tropicana Orange Strawberry Banana Flavored Blend of 5

4  Juices (primarily apple juice), R.W. Knudsen Cranberry Flavored Juice Blend

5  (primarily white grape juice), and Ceres 100% Fruit Juice Blend Passion Fruit

6  (primarily pear juice).  *Id.* ¶ 4.

7  **B.  Regulations Governing Flavored Juice Blends**

8  The regulations governing flavored juice blends are described more fully in

9  TCCC's Rule 12(c) motion for judgment on the pleadings.  In sum, in light of the

10  profusion of flavored juice blends, FDA enacted detailed naming and labeling

11  regulations for such blends that, in its considered opinion, are sufficient to protect

12  consumers from being misled.  *See* Food Labeling, Declaration of Ingredients,

13  Common or Usual Name for Nonstandardized Foods, Diluted Juice Beverages, 56

14  Fed. Reg. 30452-01 at 30455 (July 2, 1991).

15  After receiving and evaluating numerous public comments, FDA:  (1)

16  determined that using the word "flavor" in a juice blend's name will adequately

17  inform consumers that the "characterizing juice" is not the primary ingredient, *id.* at

18  2921, ¶ 50; (2) determined that if a named juice is not the predominant juice, using

19  the word "flavor" on the label dispels confusion and "will adequately deal with the

20  kinds of misleading labeling discussed in the comments from consumer groups," *id.*

21  at 2900, ¶ 10; (3) expressly permitted manufacturers to include a non-primary

22  ingredient in a product name so long as it also "indicate[s] that the named juice is

23  present as a flavor or flavoring," 21 C.F.R. § 102.33(d)(1) (2009); *see also* 21

24  C.F.R. § 101.22(i)(1)(i) (2009); (4) required that the name of a multiple-juice

25  beverage that does not identify all component juices on the label (other than in the

26  ingredient statement) must include a word such as "blend," 21 C.F.R. § 102.33(c)

27  (2009); and (5) explicitly refused to require that fruit vignettes on juice labels

28  proportionately reflect the quantity of each fruit ingredient in the juice, 58 Fed.

DEF. MEM. OF POINTS AND AUTHORITIES
CV09-06309 SJO-FMO

3885188v.1

1    Reg. 2897 at 2921, ¶¶ 52-53.

2              **C.      The Juice's Name and Label**

3          The Juice's name and label are fully compliant with these FDA regulations –

4    ***a fact that Saeidian does not contest***.  Text at the top of the Juice's label identifies

5    the product as a "100% fruit juice blend."  Lurie Decl. Ex. K.  Below that text, a

6    prominent banner or "flag" proclaims that the Juice contains "Omega-3/DHA" to

7    "HELP NOURISH YOUR BRAIN" and "5 Nutrients To Support Brain & Body."

8    *Id.*  Below the flag is a fruit vignette that depicts each of the five fruit juices in the

9    product.  *Id.*  These are, in descending order by volume (as shown in the

10   "Ingredients" panel on the back of the bottle), apple, grape, pomegranate, blueberry

11   and raspberry.  Schmidt Decl. ¶ 4; Lurie Decl. Ex. K.  Below the vignette is the

12   Juice's formal name:  "Pomegranate Blueberry Flavored Blend of 5 Juices."  Lurie

13   Decl. Ex. K.  The label on the back of the Juice lists the five fruits included in the

14   blend twice, starting with apple and grape, the primary juices by volume.  *Id.*

15             **D.      TCCC's Advertising and Marketing of the Juice**

16         TCCC has advertised the Juice through four television commercials, print

17   ads, in-store promotions, and on the Minute Maid website.  Schmidt Decl. ¶ 5.

18   These advertisements repeat the Juice's name and show its label, but focus on its

19   added nutrients, not its flavor.  *Id.*; Lurie Decl. Exs. M-R.  For instance, the website

20   states that the product contains "Omega-3/DHA . . . and four other nutrients to help

21   nourish your brain and body," and describes those nutrients in detail.  Lurie Decl.

22   Ex. L. Saeidian does not challenge the "help nourish your brain" claim that forms

23   the centerpiece of TCCC's advertising and marketing.

24         The Juice is priced to be competitive with other flavored juice blends sold in

25   the chilled juice section of the grocery store, such as Tropicana products, and

26   typically sells for between $2.99 to $3.49.  Schmidt Decl. ¶ 6.  It is not priced to

27   compete with, or marketed as a competitor of, premium pomegranate products

28   made primarily or entirely of pomegranate juice, which are typically sold in the

DEF. MEM. OF POINTS AND AUTHORITIES
CV09-06309 SJO-FMO

1   produce section. *Id.*

2   **E.    Saeidian's Claims and Related Litigation**

3   Saeidian's claims are premised on the aspects of the Juice's name and label

4   that are governed by – and compliant with – the FDA regulations described above.

5   The sole paragraph of the Complaint that specifically alleges what Saeidian found

6   misleading focuses entirely on the Juice's name and the fruit vignette on the label:

7   "Defendant decided to give the juice product the **brand name of 'Pomegranate**

8   **Blueberry' juice on the front label**, and to prominently display a **picture of a**

9   **pomegranate next to three blueberries** . . . ."  Complaint ¶ 18 (emphases added).

10  Although Saeidian alleges in a conclusory fashion in the Complaint that there are

11  "other misleading elements" of the Juice's label, she failed to identify any such

12  elements in either the Complaint or at her deposition.

13  Indeed, Saeidian's deposition testimony confirmed that she relied upon, and

14  was allegedly misled by, the words "Pomegranate Blueberry" in the Juice's name

15  and the depiction of a pomegranate and blueberries on the Juice's label, despite the

16  fact that the other fruits used in the Juice are also depicted on the label.  When

17  Saeidian purchases juice, she "[m]ostly" looks at "the actual name of the juice . . .

18  and the picture" on the front label, and, on the back label, she "mainly look[s] for

19  the name that is mentioned in the front label."  Dep. 63:8-15, 64:5-11.[2]  Saeidian

20  testified that the reason she thought the Juice's main ingredients were pomegranate

21  and blueberry juice was because "[t]he only name it says [is] pomegranate and

22  blueberry."  Dep. 169:7-24; *see also id.* at 66:24-67:6 (stating that she "rel[ied] on

23  the label when it says . . . that [it] is pomegranate and blueberry"); *id.* at 109:15-

24  110:2 (testifying that although there were fruits other than pomegranates and

25  blueberries on the Juice's label, she was focused on the words "pomegranate

26

27   [2] The cited excerpts of Saeidian's deposition are attached as Exhibit 1 to the
    Zalesin Declaration.

28

DEF. MEM. OF POINTS AND AUTHORITIES
CV09-06309 SJO-FMO

3885188v.1

blueberry").  Saeidian believes that the putative class members "buy it for pomegranate blueberry because *the name it stands out as the pomegranate blueberry.  Nothing else.*"  *Id.* at 197:22-24 (emphasis added).

Moreover, Saeidian testified that before purchasing the Juice, the *only* advertisements she saw were the Juice's label, a single television ad and an in-store display for the Juice.  Dep. 101:11-16, 130:11-131:13.  She did *not* see the Juice's website before purchasing the Juice, nor did she see any other television ads, print ads or coupons for the Juice.  Dep. 129:16-130:4, 134:25-135:6, 103:24-104:8.

With respect to the television ad and in-store display, the only details Saeidian could recall were that they "focus[ed] on the name and, of course, show[ed] the bottle."  Dep. 102:14-24 (describing her recollection of the television commercial); *see also* Dep. 130:11-131:13 (testifying that the in-store display "was like focused on the name of Minute Maid Pomegranate Blueberry juice," and also depicted the bottle and mentioned "[w]ith five flavored . . . juices.  That's it.").  When asked what her decision to purchase the Juice was based on, she answered "*the label on the product*," and even when her counsel prompted her by asking, "[A]s well as the [TV] commercial?," she reiterated, twice, "*labeling the product*."  Dep. 172:23-173:9 (emphasis added).

While Saeidian alleges that the Juice's name and the picture on the label caused uniform, class-wide confusion and harm, this contention is belied by the allegations made in another putative class action concerning the Juice, *Dunn v. The Coca-Cola Company*, No. BC423721 (Cal. Sup. Ct. L.A. County).  The *Dunn* plaintiff alleges that he and all other California purchasers of the Juice relied on and were misled by the fortification-related statements made on the Juice's label, on the Juice's website, and in a television commercial for the Juice.  Zalesin Decl. Ex. 2 ¶¶ 9, 26-36.  The *Dunn* complaint lacks any allegation that the Juice's name or the vignette on the label were false or misleading in any respect.  *See id.*

DEF. MEM. OF POINTS AND AUTHORITIES
CV09-06309 SJO-FMO

## **STANDARD FOR CLASS CERTIFICATION**

Saeidian "has the burden of showing that the requirements of Rule 23(a) are met and that the class is maintainable pursuant to Rule 23(b)," *Narouz v. Charter Communications, LLC*, 591 F.3d 1261, 1266 (9th Cir. 2010), and the Court "must conduct a 'rigorous analysis' to determine whether" she has met her burden, *Zinser v. Accufix Research Institute, Inc.*, 253 F.3d 1180, 1186, *amended* 273 F.3d 1266 (9th Cir. 2001). A grant of class certification must be based on "sufficient information [for the Court] to form a reasonable judgment" that "each of the Rule's requirements" is met. *Blackie v. Barrack*, 524 F.2d 891, 901 n.17 (9th Cir. 1975).

## **ARGUMENT**

Saeidian's claims and class certification motion are premised entirely on the Juice's FDA-compliant name and label. *See supra* at 3-6. Her only argument as to why a class should be certified is that TCCC made "uniform misrepresentations and/or omissions . . . on *every* bottle" of the Juice – and the only "misrepresentations and/or omissions" she identifies are the Juice's name and fruit vignette. *See* Pltf. Mem. at 11-12, 14, 16. Moreover, she does not and could not assert any other claim; she purchased the Juice in reliance on its name and label, and she therefore lacks standing to assert any claim other than one based on the name and label. TCCC has shown in its Rule 12(c) motion for judgment on the pleadings that Saeidian's name and label claims are preempted by federal law and protected by California's safe harbor doctrine, and must be dismissed. Class certification should be denied for this reason alone.

Saeidian's motion for class certification is also fundamentally flawed because she has not offered any basis for the Court to conclude that other class members were similarly injured. Saeidian has not shown that viewing the Juice's label was sufficient to mislead other class members into believing that the Juice's predominant ingredients are pomegranate and blueberry juice. Nor has she shown that other class members are entitled to a measurable amount of restitution, or that

- 7 -

3885188v.1

1   there is any way to determine what an appropriate amount of restitution might be.

2   Under both federal and state law, class certification is inappropriate where, as here,

3   the proposed class clearly includes consumers who suffered no actual injury.

4   **I.      THE ONLY CLAIM SAEIDIAN CAN ASSERT IS PREEMPTED**

5          In both the Complaint and her deposition testimony, Saeidian identifies two

6   elements of the Juice's label as misleading:  the Juice's name and the fruit vignette.

7   Therefore, those elements are the only ones that could have caused her injury, and

8   are the only elements as to which she has standing to sue.  Any claim based on

9   those elements, however, must be dismissed as preempted by federal law and

10  cannot support a class action.

11         **A.      Saeidian Lacks Standing To Sue With Respect to Any Claim**

12         **            Not Based on the Juice's Name or Label**

13         Although the Complaint contains conclusory allegations concerning a broad

14  range of advertising – and Saeidian has offered copies of the Juice's website and

15  various print ads, coupons and television ads in support of this motion (Lurie Decl.

16  Ex. L-R) – Saeidian has testified that the only advertising she saw before

17  purchasing the Juice was the Juice's label and a single, unspecified television ad

18  and in-store display that showed the Juice's name and label.  *See supra* at 5-6.

19  Further, she testified repeatedly at her deposition that she relied on, and believes

20  she was misled by, the Juice's name and fruit vignette.  *See, e.g.*, Dep. 172:23-

21  173:9 (answering "***the label on the product***" when asked what her decision to

22  purchase the Juice was based on, even after her counsel asked her "[A]s well as the

23  [TV] commercial?" (emphasis added)); *see also supra* at 5-6.

24         Saeidian's testimony establishes that the only claim she has standing to bring

25  is one based on the Juice's name and label.  "[T]he requirement of injury in fact is a

26  hard floor of Article III jurisdiction that cannot be removed by statute."  *Summers v.*

27  *Earth Island Inst.*, 129 S. Ct. 1142, 1151 (2009).  Thus, this Court lacks jurisdiction

28  over Saeidian's claims unless she can show that she "has actually been injured by

DEF. MEM. OF POINTS AND AUTHORITIES
CV09-06309 SJO-FMO

1   the defendant's challenged conduct." *Lee v. Am. Nat'l Ins. Co.*, 260 F.3d 997, 1001

2   (9th Cir. 2001) (Article III standing requirements apply to claims under the UCL

3   brought in federal court).  And Saeidian cannot possibly have been injured by false

4   advertising that she never saw or relied on.  Thus, she has no standing to bring

5   claims in this Court with respect to elements of TCCC's advertising other than the

6   Juice's name and the vignette on its label.  *Id.* at 1001-02 (holding that plaintiff

7   lacked standing to bring a claim under California's UCL in federal court where he

8   had not suffered injury due to the alleged unfair conduct).[3]

9

10      [3] Saeidian may argue that she nonetheless has standing to pursue other claims
11   under the statutory provisions of the UCL, but Article III standing cannot be
     provided by state law.  *Lee*, 260 F.3d at 1001-02 ("[A] plaintiff whose cause of
12   action is perfectly viable in state court under state law may nonetheless be
     foreclosed from litigating the same cause of action in federal court, if he cannot
13   demonstrate the requisite injury.").  In any event, the UCL and FAL both contain a
     statutory standing provision that, like Article III, precludes class actions by
14   plaintiffs who were not actually injured by the alleged conduct.  *See* Cal. Bus. &
15   Prof. Code §§ 17203, 17204 (requiring named plaintiff in UCL case to have been
     injured "as a result of" the alleged unfair competition); *id.* § 17535 (identical
16   standing requirement in FAL).  This requirement was expressly intended to
17   preclude suits brought by plaintiffs who had never seen the advertising at issue.
     2004 Cal. Legis. Serv. Prop. 64 §(1)(b)(3) (preamble to Proposition 64, which
18   introduced standing requirement, stating that UCL was "being misused" by
19   attorneys who, *inter alia*, "[f]ile lawsuits for clients who have not . . . viewed the
     defendant's advertising"); *see also Pfizer Inc. v. Superior Court*, 182 Cal. App. 4th
20   622, 633, 105 Cal. Rptr. 3d 795, 804-05 (Cal. Ct. App. 2d 2010) (plaintiff lacked
21   statutory standing to bring UCL and FAL claims based on television advertisements
22   and product labels he did not see or rely on).
         Saeidian may also contend that under *In re Tobacco II Cases*, 46 Cal. 4th
23   298, 93 Cal. Rptr. 3d 559 (2009), she may sue as to the television ad and in-store
24   display she saw, even though she has not identified those ads with any specificity.
     *See supra* at 6.  However, *In re Tobacco II Cases* is inapplicable here for two
25   reasons:  (1) it dealt with standing requirements under California state law and has
26   no bearing on Article III standing, and (2) it held that a plaintiff need not identify
     the specific ads on which she relied only where she was exposed to a decades-long
27   advertising campaign that saturated the market.  *Id.*, 46 Cal. 4th at 327-28.  Here,

28

**B.** **Saeidian's Name and Label Claims Are Preempted**

As shown in greater detail in TCCC's Rule 12(c) motion, Saeidian's name and label claims fail because they are preempted by federal law.  "[S]tate law that imposes obligations that are 'not identical to' those imposed in Section 343(f) and 343(i) of the FFDCA, as well as the FDA's implementing regulation for these sections, are expressly preempted."  *Pom Wonderful LLC v. The Coca-Cola Company*, No. CV 08-06237 SJO (JTLx) [Dkt. # 25], at 10 (C.D. Cal. Feb. 10, 2009) (Zalesin Decl. Ex. 3; hereafter, "*Pom* Dismissal Order") (quoting 21 U.S.C. § 343-1(a)); *see also Pom Wonderful LLC v. Ocean Spray Cranberries, Inc.*, 642 F. Supp. 2d 1112, 1121-22 (C.D. Cal. 2009) (same).  Thus, a plaintiff may not attempt "through [her] state law claims . . . to impose requirements differing from [the federal] naming and labeling requirements for multiple-juice beverages in the FFDCA and the FDA's implementing regulations."  *Pom* Dismissal Order at 10.

Saeidian does not allege, and cannot show, that the Juice's name and fruit vignette failed to comply with FDA regulations.  To the contrary, they are precisely the type of name and illustration that FDA determined would ***not*** mislead consumers.  *See supra* at 3-4.  If Saeidian were to succeed in obtaining the relief she seeks – relief prohibiting TCCC from using a name and label that are expressly permitted by the FDA regulations – TCCC would be subject to labeling requirements that are different from and additional to those established by FDA.  Thus, Saeidian's claims based on the Juice's name and label are expressly preempted by federal law.  *See Pom* Dismissal Order at 10; *see also, e.g., Kanter v. Warner-Lambert Co.*, 99 Cal. App. 4th 780, 795, 122 Cal. Rptr. 72 (Cal. Ct. App. 1st 2002) ("[W]hen a state law claim, however couched, would effectively require a

---

where the advertising at issue was much more limited in scope, Saeidian's inability to identify the ads with specificity precludes her from suing on them.  *See Pfizer*, 182 Cal. App. 4th at 633-34 (*Tobacco II* did not apply where advertising campaign at issue lasted six months).

DEF. MEM. OF POINTS AND AUTHORITIES
CV09-06309 SJO-FMO

3885188v.1

1  manufacturer to include additional or different information on a federally approved

2  label, it is preempted.").

3        Moreover, even if Saeidian's claims were not preempted, TCCC has a

4  complete defense to those claims under California's "safe harbor" doctrine, which

5  bars UCL claims based on conduct expressly permitted by federal law. *Pom*

6  Dismissal Order at 14 (acknowledging that California's safe harbor doctrine would

7  bar "Pom's claim [under the UCL] . . . with respect to 'business practices

8  specifically permitted' or conduct 'clearly permit[ted]' by the FFDCA" (citing *Cel-*

9  *Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 182, 83 Cal.

10  Rptr. 2d 548, 562 (1999); *McKell v. Wash. Mut., Inc.*, 142 Cal. App. 4th 1457,

11  1474, 49 Cal. Rptr. 3d 227, 241 (Cal. Ct. App. 2d 2006)).  Saeidian's name and

12  label claims must be dismissed and cannot support a class action.[4]

13  **II.     SAEIDIAN HAS NOT SHOWN THAT A CLASS ACTION CAN**

14  **BE MAINTAINED HERE**

15        Even if the Court were not to dismiss the Complaint in its entirety, class

16  certification would still be improper.  The class is grossly overbroad and includes

17  consumers who did not suffer any injury at all because they were never misled,

18  much less misled in the same manner Saeidian alleges.  Article III of the federal

19  Constitution does not permit a class action to be maintained in these circumstances.

20  Moreover, while Article III is dispositive here, state law dictates the same result.  A

21  grant of class certification on UCL and FAL claims is far from automatic.  At a

22  minimum, the plaintiff must show:  (1) that the putative class members were

23  "exposed to" the same false claim that injured her, *Pfizer Inc. v. Superior Court*,

24

25        [4] As shown in TCCC's motion for judgment on the pleadings, preemption
also bars any claims based on the Juice's website, which FDA considers to be
26  "labeling," and any claims that are based on an ad's incidental use of the Juice's
name or label.  Thus, because Saeidian has not identified any non-name or label
27  element of any advertisement as misleading, ***all*** of her claims are preempted.
28

- 11 -                     DEF. MEM. OF POINTS AND AUTHORITIES
                                     CV09-06309 SJO-FMO

1   182 Cal. App. 4th 622, 633, 105 Cal. Rptr. 3d 795 (Cal. Ct. App. 2d 2010), and (2)

2   that there is some evidentiary basis for awarding a "measurable amount" of

3   restitution to each class member, *In re Vioxx Class Cases*, 180 Cal. App. 4th 116,

4   136, 103 Cal. Rptr. 3d 83 (Cal. Ct. App. 2d 2009).  Saeidian has not shown, and

5   cannot show, that either of those conditions is met here.

6          **A.      Article III Prohibits Certifying An Overbroad Class**

7                  **Including Individuals Who Suffered No Injury**

8          The standing requirements of Article III of the Constitution apply in any

9   class action brought in federal court, regardless of whether different standing

10  requirements might apply under state law.  *Lee*, 260 F.3d at 1001-02 (plaintiff

11  lacked Article III standing to litigate UCL claim in federal court); *Hangarter v.*

12  *Provident Life & Accident Ins. Co.*, 373 F.3d 998, 1021-22 (9th Cir. 2004) (same).

13  Article III "limits the jurisdiction of the federal courts" to cases where the plaintiff

14  "has actually been injured by the defendant's challenged conduct."  *Lee*, 260 F.3d

15  at 1001.  Although named plaintiffs typically do not need to show at the outset that

16  other class members have Article III standing, "no class may be certified that

17  contains members lacking Article III standing."  *Denney v. Deutsche Bank AG*, 443

18  F.3d 253, 264 (2d Cir. 2006).

19         Accordingly, courts in the Ninth Circuit have denied class certification where

20  the putative class includes individuals who have not actually been injured and lack

21  Article III standing.  In *Sanders v. Apple Inc.*, 672 F. Supp. 2d 978 (N.D. Cal.

22  2009), for example, the court denied class certification where, as here, the proposed

23  class "necessarily include[d] . . . individuals who either did not see or were not

24  deceived by advertisements, and individuals who suffered no damages," and

25  therefore lacked Article III standing.  *Id.* at 991 (denying class certification on fraud

26  and warranty claims).  Similarly, in *Burdick v. Union Sec. Ins. Co.*, No. CV 07-

27  4028 ABC, 2009 WL 4798873 (C.D. Cal. Dec. 9, 2009), the court decertified a

28  class with respect to UCL and FAL claims where "only a handful of class

DEF. MEM. OF POINTS AND AUTHORITIES
CV09-06309 SJO-FMO

members" had suffered a similar injury to the named plaintiff and the majority of the class lacked Article III standing. *Id.* at **4-6 & n.9. *See also, e.g.*, *Bishop v. Saab Automobile A.B.*, No. CV 95-0721 JGD, 1996 WL 33150020, at *5 (C.D. Cal. Feb. 16, 1996) (refusing to certify class in "tendency to fail" product liability case "because the purported class includes members who have suffered no injury and therefore lack standing to sue").[5]

## B.    The Putative Class Is Impermissibly Overbroad

The only conclusion that can reasonably be drawn from the evidence here is that the proposed class – *i.e.*, all California purchasers of the Juice – includes a significant number of consumers who did not suffer any injury at all, either because:  (1) they did not understand the Juice's name and label to convey the false message that Saeidian allegedly perceived about the Juice's primary ingredients, or (2) as the *Dunn* plaintiff alleges, they bought the Juice for a reason entirely unrelated to its primary ingredients – for example, because they were interested in the added fortification or had brand loyalty to Minute Maid.

Saeidian makes no effort to show that class members suffered the same

---

[5] Saeidian may argue that these cases are inconsistent with the general proposition that "[i]n a class action, standing is satisfied if at least one named plaintiff meets the requirements." *Bates v. United Parcel Serv., Inc.*, 511 F.3d 974, 985 (9th Cir. 2007).  However, cases stating that proposition are "best understood as reiterating the settled point of law that a class claim cannot proceed unless at least one named plaintiff has Article III standing to bring that claim." *Burdick*, 2009 WL 4798873, at *4 (noting that *Bates* did not "actually address whether absent class members are required to have Article III standing").

Saeidian may also argue that, under *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 119 S. Ct. 2295 (1999), the Court should postpone ruling on Article III standing until *after* it has determined whether Rule 23's requirements are met here. However, the Ninth Circuit has rejected this argument, noting that *Ortiz* endorsed such an analysis "in the very specific situation of a mandatory global settlement class." *Easter v. Am. West Fin.*, 381 F.3d 948, 962 (9th Cir. 2004) (holding that district court "correctly addressed the issue of standing before it addressed the issue of class certification").

DEF. MEM. OF POINTS AND AUTHORITIES
CV09-06309 SJO-FMO

3885188v.1

injury she did, other than to reiterate repeatedly that each purchaser of the Juice saw the Juice's label.  *E.g.*, Pltf. Mem. at 11-12, 14, 17.  That is insufficient.  This is not a case where a specific, explicit advertising claim is being challenged as false – as was the case, for example, in *Weiner v. Dannon Co., Inc.*, 255 F.R.D. 658 (C.D. Cal. 2009), where the plaintiffs alleged that express health claims made on the defendant's packaging and in its ads were false.  *Id.* at 663 (plaintiffs challenged label statement that product was "'scientifically proven' to naturally regulate digestion when eaten daily for two weeks").  While the Court could reasonably presume injury in *Dannon*, here, the Court cannot simply presume that all individuals who saw the label were misled by or relied on the same false claim.  To the contrary, the available evidence – an expert survey conducted in other litigation against TCCC, the existence of the *Dunn* action, and Saeidian's own testimony – all points to the conclusion that Saeidian's understanding was ***not*** shared by other class members, and that other class members therefore do not have a similar injury. [6]

### 1.    The Pom Survey

Saeidian speculates that a consumer survey conducted by an expert could establish that the Juice's name and fruit vignette convey a uniform false message to consumers, such that all class members who viewed the label would have been misled by, and thus injured by, that false message.  Pltf. Mem. at 14, 16-17.  However, she has not actually offered such a survey.  And a survey conducted by Dr. Deborah Jay on behalf of Pom Wonderful LLC in other litigation against TCCC – which Saeidian's expert has reviewed but offers no opinion on (Belch Decl. ¶ 10) – revealed that the majority of consumers did ***not*** suffer the injury Saeidian alleges.

Pom's survey purported to examine the precise issue Saeidian raises here:

_____

[6] Thus, *Weiner* supports denial of class certification here, because the Court held that it would be improper to certify a class that included members who only had claims with respect to different advertising statements than the one the named plaintiff challenged.  *Id.*, 255 F.R.D. at 666.

whether the words "Pomegranate Blueberry" on the Juice's label led consumers to believe that pomegranate and blueberry juice are the Juice's main ingredients. Zalesin Decl. Ex. 4 (Pom Survey) at 74.  The survey found that after viewing the Juice's label, the vast majority of respondents did not believe it communicated a message about pomegranate or blueberry juice.  *Id.* at 76, 91.  Rather, in response to an open ended question about the label's primary message – the only substantive survey question that was not biased – an overwhelming number of consumers (87%) focused on other aspects of the label and did not indicate that they believed the Juice was predominantly made of pomegranate and blueberry juices.  *Id.*

The only valid conclusion to be drawn from the available survey evidence is that the vast majority of consumers who view the label do not perceive any message concerning the Juice's ingredients.  Thus, the survey shows that any class of all Juice purchasers is necessarily overbroad and includes a significant number of individuals who did not suffer the harm Saeidian alleges, and thus lack standing.

## 2.     The *Dunn* Action

This conclusion is buttressed by the second consumer class action filed against TCCC concerning the Juice – the *Dunn* case.  In that litigation, the plaintiff contends that he and other California purchasers relied on and were misled by the Omega-3 and DHA claims on the Juice's label in purchasing the Juice.  The *Dunn* plaintiff does not make any allegation concerning the amount of pomegranate juice and blueberry juice contained in the Juice.  *See supra* at 6.  Thus, the *Dunn* action disproves Saeidian's assertion that all members of her purported class – *i.e.*, all California purchasers of the Juice – suffered an injury similar to hers.

## 3.     Saeidian's Testimony

Saeidian's own testimony further rebuts any inference that the class members were misled and injured by the same false message that allegedly injured her, because her explanation as to how the Juice's name and label convey the alleged false message defies common sense.  To justify her claim, Saeidian simply pretends

that the words "Flavored Blend of 5 Juices" do not appear on the Juice's label.  For instance, she testified that although she understands the word "flavored" to indicate that something is "not the main ingredient" (Dep. 91:14-18), she did not understand that the Juice was merely pomegranate-blueberry flavored because "pomegranate blueberry" appeared on separate lines immediately above the word "flavored." Rather, she read each line of text on the label as a *separate sentence that "ha[s] its own meaning"* – including the lines "[f]rom concentrate with added" and "[i]ngredients and other natural flavors."  Dep. 155:24-157:1 (emphasis added). Saeidian further testified that, though the pomegranates and blueberries in the fruit vignette indicated to her that those were ingredients in the Juice, she thought the other fruits in the picture were "[j]ust for prettiness."  Dep. 109:15-110:2.

As courts have noted, because "[b]efuddlement is part of the human condition," it is "inevitable" that a given advertisement will cause "some confusion," albeit an amount that is not actionable.  *Mattel, Inc. v. MCA Records, Inc.,* 28 F. Supp. 2d 1120, 1148 (C.D. Cal. 1998); *see also Lavie v. Proctor & Gamble Co.*, 105 Cal. App. 4th 496, 507, 129 Cal. Rptr. 2d 486 (Cal. Ct. App. 4th 2003) (noting that while "[p]erhaps a few misguided souls believe . . . that all 'Danish pastry' is made in Denmark," it is not "an actionable deception to advertise 'Danish pastry' when it is made in this country").  There is no basis to conclude that consumers who did not share Saeidian's idiosyncratic beliefs would have understood the Juice's label in the same way and therefore have been injured by the same false claim.  Saeidian's attempt to include in the class numerous members who did not suffer the same injury that she alleges warrants denial of class certification.[7]  *Denney*, 443 F.3d at 264; *Sanders,* 672 F. Supp. 2d at 991; *Burdick*,

_____

[7] Saeidian may argue that the Court should not engage in this standing analysis because it implicates a merits question, *i.e.*, whether the Juice's name and label were likely to deceive a substantial number of consumers.  However, the Court must consider standing in order to determine whether it has jurisdiction.  *See*

DEF. MEM. OF POINTS AND AUTHORITIES
CV09-06309 SJO-FMO

3885188v.1

1   2009 WL 4798873 at **4-6 & n.9.

2          C.      **The Basic Requirements of Rule 23 Are Not Met**

3          Because the proposed class includes a significant number, if not a vast

4   majority, of consumers who did not suffer the injury that Saeidian alleges, Rule 23

5   also dictates denying class certification.  Class certification requires, *inter alia*, a

6   showing that issues common to all class members predominate over any issues

7   affecting only individuals; that the named plaintiff's claims are typical of the class

8   claims; and that class treatment is superior to other methods of adjudication and

9   will be manageable.  Fed. R. Civ. P. 23(a)(3), 23(b)(3).  These prerequisites are

10  lacking where the proposed class is overbroad and includes numerous individuals

11  who were not injured in the same manner alleged by the named plaintiff.

12         In order cure the standing defects and narrow the class to only those

13  purchasers who were injured, the Court here would be required to engage in

14  painstaking, individualized fact-finding that is inconsistent with the requirements

15  and purpose of Rule 23.  Indeed, the Court would need to conduct a litany of "mini-

16  trials" to determine whether each putative class member: (1) noticed the portions of

17  the label that allegedly deceived Saeidian; (2) received the same pomegranate and

18  blueberry "content" message that Saeidian alleges she received; and (3) purchased

19  the Juice as a result of such alleged deception.  The process would be

20  extraordinarily burdensome and contrary to the core principles of efficiency and

21  expediency on which Rule 23 is grounded.  For this very reason, courts have held

22  that Rule 23(b)(3)'s requirements are not met where, as here, a named plaintiff

23  attempts to certify a class of individuals who were not injured by  the same

24

25  *Lee*, 260 F.3d at 1001.  Moreover, because the propriety of class certification is
    often intertwined with the merits of an action, courts are "at liberty to consider
26  evidence which goes to the requirements of Rule 23 even though the evidence may
    also relate to the underlying merits of the case."  *Hanon v. Dataproducts Corp.*, 976
27  F.2d 497, 509 (9th Cir. 1992).

28

DEF. MEM. OF POINTS AND AUTHORITIES
                                                    CV09-06309 SJO-FMO

3885188v.1

advertising claims.[8]  *See, e.g.*, *Sanders*, 672 F. Supp. 2d at 991; *Hodes v. Van's Int'l Foods*, No. CV-09-01530 RGK, 2009 WL 2424214, at *4 (C.D. Cal. July 7, 2009) (regardless of whether UCL claim required individualized analysis, putative class was unmanageable and could not be certified under Rule 23 where plaintiff had not shown feasible method of identifying which putative class members were injured by purchasing product with false information on label); *cf. Cohen v. DirecTV, Inc.*, 178 Cal. App. 4th 966, 979, 101 Cal. Rptr. 3d 37, 48 (Cal. Ct. App. 2d 2009) (common issues do not predominate where there was no evidence that all consumers were exposed to the advertising at issue before purchasing the defendant's product).[9]  Thus, the proposed class cannot properly be certified.

### D.    State Law Also Precludes Certifying the Class

The Court should reject any argument by Saeidian that state law authorizes class certification here.  As shown above (*supra* at 12), state law cannot remedy a defect in Article III standing.  Furthermore, California state case law parallels the federal case law set forth above, and also establishes that a class action on UCL and FAL claims cannot be maintained where the putative class members did not all suffer the same injury as the named plaintiff.

California courts have recognized that the UCL does not "authorize . . . [relief] on behalf of a consumer who was never exposed in any way to an allegedly

---

[8] Saeidian's assertion that class members saw a variety of ads, singly or in combination – including the label, television ads, print ads, coupons and the Juice's website – only compounds the difficulty of determining class membership here.

[9] *See also, e.g.*, *Kaldenbach v. Mutual Omaha Life Ins. Co.*, 178 Cal. App. 4th 830, 850, 100 Cal. Rptr. 3d 637, 653 (Cal. App. 4th 2009) (affirming denial of class certification on UCL claim because "trial court could properly conclude there was no showing of uniform conduct likely to mislead the entire class"); *Caro v. Procter v. Gamble Co.*, 18 Cal. App. 4th 644, 665, 22 Cal. Rptr. 2d 419 (Cal. Ct. App. 4th 1993) (in case concerning allegedly misleading juice label, finding that because named plaintiff had read only certain parts of the label, his "claim would be typical of only those persons who reading of the label was similarly limited").

DEF. MEM. OF POINTS AND AUTHORITIES
CV09-06309 SJO-FMO

3885188v.1

1   wrongful business practice." *Cohen*, 178 Cal. App. 4th at 980; *see also Pfizer*, 182

2   Cal. App. 4th at 633 ("[O]ne who was not exposed to the alleged

3   misrepresentations and therefore could not possibly have lost money or property as

4   a result of the unfair competition is not entitled to restitution."); *McAdams v.*

5   *Monier, Inc.*, 182 Cal. App. 4th 174, 192, 105 Cal. Rptr. 3d 704 (Cal. Ct. App. 3d

6   2010) (the class in a UCL false advertising case must be limited to individuals who

7   were "exposed to" the allegedly false advertising "prior to purchasing" the

8   defendant's product).

9          Saeidian has not offered any reasonable basis for the Court to find that all

10  California purchasers perceived the same misleading message that she claims – *i.e.*,

11  the message that the primary ingredients of the Juice are pomegranate and

12  blueberry.  As such, she has, in effect, failed to show that all putative class

13  members were "exposed" to the same false advertising claim that caused her

14  alleged injury.  Where, as here, there is no evidence that "a majority of . . .

15  consumers viewed any of [the allegedly false] . . . commercials," a proposed class

16  consisting of all purchasers of the product at issue – such as the proposed class here

17  – is "grossly overbroad" and cannot be certified.  *Pfizer*, 182 Cal. App. 4th at 633

18  (vacating class certification order where there was no evidence that a majority of

19  consumers saw one of the four television ads at issue, which did not run

20  continuously); *see also Cohen*, 178 Cal. App. 4th at 979 (class certification

21  improper where proposed class included consumers "who never saw" the allegedly

22  false advertisements "before deciding to purchase" the product at issue).

23         Furthermore, Saeidian seeks class-wide restitution (Complaint ¶ 74), but fails

24  to show that there is any uniform method for determining the amount of restitution

25  due.  The "proper measure of restitution" is "[t]he difference between what the

26  plaintiff paid and the value of what the plaintiff received."  *In re Vioxx Class Cases*,

27  180 Cal. App. 4th at 131.  If the evidence shows that there is no common method

28  for measuring this difference, the class cannot be certified.  *Id.* at 131, 136; *see also*

DEF. MEM. OF POINTS AND AUTHORITIES
CV09-06309 SJO-FMO

3885188v.1

1   *Ali v. U.S.A. Cab Ltd.*, 176 Cal. App. 4th 1333, 1350, 98 Cal. Rptr. 3d 468, 482

2   (Cal. Ct. App. 4th 2009) ("'[t]here can be no cognizable class [for UCL restitution

3   claim] unless it is first determined that members who make up the class have

4   sustained the same or similar damage'" (citation omitted)).

5          Saeidian has not even attempted to allege facts or offer evidence showing

6   that class members who correctly understood the Juice's label received less value

7   than they paid for.  Assuming other consumers were misled, there is no uniform

8   method for measuring restitution because each such consumer's perception of the

9   value received will vary depending on why he or she purchased the Juice.  Saeidian

10  testified, for instance, that she purchases mixed fruit juices such as the Juice in

11  order to get a "different taste" and that the Juice was worth only "a dollar or two" to

12  her.  Dep. 59:20-60:5, 190:24-192:4.  Thus, in her case, the appropriate restitution

13  might be the difference between the price she paid for the Juice and the price she

14  would have paid for a less expensive blend of only apple and grape juice.  But she

15  offers no support for inferring that other class members would assign a similar

16  value to the Juice, or indeed, that they would be entitled to any "'measureable

17  amount' of restitution" at all.  *In re Vioxx Class Cases*, 180 Cal. App. 4th at 136.

18                              **CONCLUSION**

19         For the foregoing reasons, the Court should deny Plaintiff's motion for class

20  certification.

21  DATED: April 12, 2010                PATTERSON BELKNAP WEBB &
                                         TYLER LLP
22

23                                       By:    */s/ Steven A. Zalesin*

24                                              Steven A. Zalesin

25                                       *Attorneys for Defendant*

26

27

28

3885188v.1