UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

Priority ____
Send ____
Enter ____
Closed ____
JS-5/JS-6 ____
Scan Only ____

**CASE NO.:** CV 09-06309 SJO (JPRx)        **DATE:** July 6, 2015

**TITLE:** Niloofar Saeidian v. The Coca Cola Company

========================================================================
**PRESENT: THE HONORABLE S. JAMES OTERO, UNITED STATES DISTRICT JUDGE**

Victor Paul Cruz                                      Not Present
Courtroom Clerk                                  Court Reporter

**COUNSEL PRESENT FOR PLAINTIFF:**      **COUNSEL PRESENT FOR DEFENDANT:**

Not Present                                           Not Present

========================================================================
**PROCEEDINGS (in chambers): ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** [Docket No. 148]

This matter is before the Court on Defendant The Coca-Cola Company's ("Coca-Cola" or "Defendant") Motion for Summary Judgment ("Motion"), filed on April 6, 2015. Plaintiff Niloofar Saeidian ("Plaintiff") filed her Opposition to the Motion on April 20, 2015, to which Defendant replied on April 27, 2015. The Court found this matter suitable for disposition without oral argument and vacated the hearing set for May 18, 2015. *See* Fed. R. Civ. P. 78(b). For the following reasons, the Court **DENIES** Defendant's Motion.

I.      FACTUAL AND PROCEDURAL BACKGROUND

On August 28, 2009, Plaintiff Niloofar Saeidian ("Plaintiff") filed the present action against Defendant The Coca-Cola Company ("Defendant" or "Coca-Cola") on behalf of herself and others similarly situated. Plaintiff alleges that Defendant has misrepresented that its Pomegranate Blueberry juice blend (the "Juice") consists of primarily pomegranate and blueberry juice even though it contains very little pomegranate and blueberry juice and is actually primarily comprised of cheap apple and grape juice. Plaintiff asserts the following claims: (1) unlawful, unfair, and deceptive business practices in violation of California Business & Professions Code § 17200; and (2) false and misleading advertising in violation of California Business & Professions Code § 17500. (*See generally* First Am. Compl. ("FAC"), ECF No. 144.)

     A.     Undisputed Facts

The parties agree that the following facts are undisputed. In September 2007, Coca-Cola launched the Juice. (Pl.'s Statement of Genuine Issues of Material Fact and Proposed Conclusions of Law in Opp'n to Def.'s Mot. for Summ. J ("SSUF") ¶ 1.) In May 2014, Coca-Cola decided to discontinue the Juice because it was not commercially successful. (SSUF ¶ 3.) In October 2014, Coca-Cola began notifying retailers that the Juice would be discontinued and would no longer be available for shipments, effective December 12, 2014. (SSUF ¶ 4.) Coca-Cola

CASE NO.:   CV 09-06309 SJO (JPRx)                    DATE:   July 6, 2015

stopped shipping the Juice to retailers in December 2014.  (SSUF ¶ 5.)  Based on the Juice's rate of sale and limited shelf-life, the Juice should no longer be available for purchase in the United States. (SSUF ¶ 5.)

Text at the top of the Juice's label identified the product as a "100% fruit juice blend."  (SSUF ¶ 6.)  Under that, a vignette depicted each of the five fruits whose juices were in the product:  apple, grape, pomegranate, blueberry, and raspberry.  (SSUF ¶¶ 7, 8.)  Below the vignette was the Juice's formal name: "Pomegranate Blueberry Flavored Blend of 5 Juices."[1]  (SSUF ¶ 9.)  The back of the bottle said "Minute Maid Pomegranate Blueberry Is Made With A Blend Of Apple, Grape, Pomegranate, Blueberry And Raspberry Juices From Concentrate And Other Ingredients" and then listed the ingredients in descending order by volume.  (SSUF ¶ 10.)  The Juice's back label also stated that it included "FRUIT AND VEGETABLE JUICES (FOR COLOR)." (SSUF ¶ 11; *see* Torrey Decl. ¶ 6.)

Coca-Cola advertised the Juice through television commercials, print ads, in-store promotions, and on the Minute Maid website.  (SSUF ¶ 12.)  The headings on the homepage identified the Juice as "Minute Maid Enhanced Pomegranate Blueberry Flavored 100% Juice Blend." (SSUF ¶ 19.)  Coca-Cola also used a number of print advertisements to advertise the Juice and disseminated coupons for the Juice, all of which pictured the Juice's bottle. (SSUF ¶¶ 20-21.)  More than a year before Coca-Cola notified retailers that the Juice would be discontinued, Coca-Cola stopped disseminating television commercials, print ads, and manufacturer coupons for the Juice.  (SSUF ¶ 22.)  All other Coca-Cola generated marketing materials for the Juice, including the website, have also been discontinued.  (SSUF ¶ 22.)

Prior to making her purchase, Plaintiff Niloofar Saeidian saw – other than the Juice's label – one TV commercial and one in-store ad for the Juice. (SSUF ¶ 23.)  Plaintiff was motivated to buy the Juice because of its label, and did not receive any coupons for the Juice, see any print ads for the Juice, hear any radio ads for the Juice, or see the Juice's website.  (SSUF ¶¶ 25-29.)

> B.    Defendant's Alleged Facts

Defendant alleges the following.  The Juice was called "Pomegranate Blueberry Flavored Blend of 5 Juices."  (SSUF ¶ 1.)  The Juice was a blend of mostly apple and grape juice flavored with small amounts of pomegranate, blueberry, and raspberry juices and natural flavorings.  (SSUF ¶ 2.)

---

[1]  Plaintiff notes, however, that "Pomegranate Blueberry" is in a larger font and separated from the rest of the name, and that the fruits are not depicted in descending order by volume on the front of the label.  (SSUF ¶¶ 8-9.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

CASE NO.: **CV 09-06309 SJO (JPRx)**   DATE: **July 6, 2015**

Advertisements for the Juice stated the Juice's name and showed its label, with a focus on its added nutrients and/or great taste. (SSUF ¶ 13.) Coca-Cola's in-store promotional materials, including "leave behind cards," posters, neckhangers, and shelf-talkers, described the Juice as a "Pomegranate Blueberry Flavored 100% Juice Blend" or "Pomegranate Blueberry Flavored Blend Of 5 Juices," and pictured the bottle – sometimes next to its fruit juice ingredients. (SSUF ¶¶ 14-15.) Coca-Cola's television commercials showed the bottle, described the Juice as "pomegranate blueberry flavored juice blend," and flashed images of the five fruit juices in the blend. (SSUF ¶ 17.) The Juice's homepage on the Minute Maid website featured a picture of the bottle surrounded by the five fruits that made up the Juice's content: apple, grape, blueberry, pomegranate, and raspberry. (SSUF ¶ 18.) The only aspects of the TV commercial and in-store ad that Plaintiff recalled were the Juice's name and label. (SSUF ¶ 24.)

    C.    Plaintiff's Alleged Facts

Plaintiff alleges the following facts in response, most of which are disputed. Plaintiff viewed a commercial for the Juice one evening while watching American Idol with her children in Woodland Hills, California. (SSUF ¶ 30.) Based on the commercial, Plaintiff believed that the Juice contained primarily pomegranate and blueberry juices. (SSUF ¶ 31.) Plaintiff relied on the image of a pomegranate and the juice's "purple-ish" color which she believed was due to the mixture of pomegranate and blueberry juices. (SSUF ¶ 32.) Plaintiff saw the same ad on at least one other occasion. (SSUF ¶ 33.) Plaintiff's decision to go to the store to check out the Juice was influenced by the commercial. (SSUF ¶ 34.)

At the store, Plaintiff saw a placard advertising the Juice, which depicted primarily blueberries and sliced pomegranate surrounding the bottle, along with a slice of apple. (SSUF ¶ 35.) Ms. Saeidian examined the bottle and the label in the store and again noticed the purple coloring and the "Pomegranate Blueberry" name. (SSUF ¶ 36.) Having purchased and enjoyed pure pomegranate juice before, and believing the Juice to be primarily pomegranate and blueberry, Plaintiff purchased a bottle of the Juice on that occasion. (SSUF ¶ 37.)

Plaintiff subsequently purchased the product two more times, drinking some and serving some to her children. (SSUF ¶ 38.) Both Ms. Saeidian and her children were disappointed with the Juice. (SSUF ¶ 39.) They never finished drinking the third bottle, and Ms. Saeidian did not purchase the product any more after that. (SSUF ¶ 40.) Ms. Saeidian conducted some on-line research and was surprised and dismayed to discover that the "Pomegranate Blueberry" juice was composed primarily of apple and grape juice and very little pomegranate and blueberry juice. (SSUF ¶ 41.)

Plaintiff was deceived by the advertising campaign, including the television and in-store advertising, into believing that the Juice was a blend of only pomegranate and blueberry juices. (SSUF ¶ 42.) Plaintiff purchased the product based on the representations in the advertisements. (SSUF ¶ 43.) Had she known that the juice contained relatively little pomegranate or blueberry

juice, she would not have bought it. (SSUF ¶ 44.) In response to counsel's question regarding what the majority of her decision was based on, Plaintiff testified that "it's a gorgeous color knowing that, yes, pomegranate and blueberry is making a good mixture of purple," adding that she "heard it first from the TV and then" came to purchase the Juice. (SSUF ¶ 45.)

The Pomegranate Blueberry Juice contains 0.3% pomegranate juice and 0.2% blueberry juice. (SSUF ¶ 46.) The primary ingredients in the Pomegranate Blueberry Juice are apple juice and grape juice, two inexpensive filler juices. (SSUF ¶ 47.)

The product launch for the Juice was supported with "a fully-integrated marketing program that includes national print and television advertising, point-of-purchase displays, an interactive Web site, public relations and national in-store sampling programs." (SSUF ¶ 48.) In all of the advertisements at issue that contain fruit imagery, the fruit vignette is different from the label. (SSUF ¶ 52.)

None of the advertisements at issue identify the juice as a "Blend of 5 Juices." (SSUF ¶ 53.) On the label and in every advertisement (except television), the words "POMEGRANATE BLUEBERRY" are prominently displayed in large font with qualifying words such as "flavored 100% juice" on a separate line in a font half the size. (SSUF ¶ 54.) In all the advertisements (including on the label and on television), pictures of pomegranates and/or blueberries either dominate or are the only fruits depicted. (SSUF ¶ 55.) Other than on the back of the label, none of these ads contain any disclosure whatsoever regarding the amount of pomegranate and blueberry actually contained in the juice. (SSUF ¶ 56.) All of the ads at issue describe the name of the product differently from the label, and in all of the ads that contain fruit imagery, the fruit vignette is different from the label. (SSUF ¶ 57.)

Coca-Cola has received over 600 complaints regarding the Juice, more than for any other product it sells. (SSUF ¶ 58.) FDA has never determined that Defendant's choice of graphics, vignettes and other unregulated elements on the label complies with FDA regulations and has certainly never approved Defendant's advertisements. (SSUF ¶ 59.)

      D.      Procedural History

This action was filed on August 28, 2009. On October 8, 2010, the Court stayed the matter pending appeal in the related case *Pom Wonderful LLC v. The Coca-Cola Co.* (Order Staying Action, ECF No. 98.) The Supreme Court rendered its decision in *Pom Wonderful* on June 12, 2014, *see* 134 S.Ct. 2228 (2014), and the Ninth Circuit issued its mandate on April 23, 2015. *See Pom Wonderful LLC v. Coca-Cola Co.*, No. 2:08-cv-06237-SJO-FMO, Mandate, ECF No. 441 (C.D. Cal. April 23, 2015).

II.      DISCUSSION

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

CASE NO.:   CV 09-06309 SJO (JPRx)          DATE:   July 6, 2015

  A. <u>Legal Standard</u>

Federal Rule of Civil Procedure 56(a) mandates that "the court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The moving party bears the initial burden of establishing the absence of a genuine issue of material fact.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial.  In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case."  *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted).  In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party does not need to produce any evidence or prove the absence of a genuine issue of material fact.  *See Celotex*, 477 U.S. at 325.  Rather, the moving party's initial burden "may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case."  *Id.*  "Summary judgment for a defendant is appropriate when the plaintiff 'fails to make a showing sufficient to establish the existence of an element essential to [his] case, and on which [he] will bear the burden of proof at trial.'"  *Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795, 805-06 (1999) (quoting *Celotex*, 477 U.S. at 322).

Once the moving party meets its initial burden, the "party asserting that a fact cannot be or is genuinely disputed must support the assertion."  Fed. R. Civ. P. 56(c)(1).  "The mere existence of a scintilla of evidence in support of the [nonmoving party]'s position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmoving party]."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986); *accord Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) ("[O]pponent must do more than simply show that there is some metaphysical doubt as to the material facts.").  Further, "[o]nly disputes over facts that might affect the outcome of the suit . . . will properly preclude the entry of summary judgment [and f]actual disputes that are irrelevant or unnecessary will not be counted."  *Anderson*, 477 U.S. at 248.  At the summary judgment stage, a court does not make credibility determinations or weigh conflicting evidence.  *See id.* at 249.  A court is required to draw all inferences in a light most favorable to the nonmoving party.  *Matsushita*, 475 U.S. at 587.

Defendant raises three arguments:  preemption of Plaintiff's name and label claims by federal law, lack of standing to challenge advertising Plaintiff did not rely on, and preemption of Plaintiff's claims by the safe harbor.  The Court addresses each argument in turn.

  B. <u>Preemption of UCL and FAL Claims</u>

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

CASE NO.: CV 09-06309 SJO (JPRx)           DATE: July 6, 2015

Pursuant to the Supremacy Clause, "Congress has the power to preempt state law." *Crosby v. National Foreign Trade Council*, 530 U.S. 363, 372 (2000) (internal citations omitted). In determining whether a state law is preempted, the "ultimate touchstone" is congressional intent. *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 485 (1996); *see English v. Gen. Elec. Co.*, 496 U.S. 72, 78–79 (1990) ("Pre[]emption is fundamentally a question of congressional intent."). "As a result, any understanding of the scope of a pre[]emption statute must rest primarily on a fair understanding of congressional purpose." *Medtronic, Inc.*, 518 U.S. at 485–86 (internal citations and quotations omitted).

Supreme Court precedent establishes that state law is preempted in three circumstances. *English v. Gen. Elec. Co.*, 496 U.S. 72, 78 (1990). First, in express preemption, Congress may expressly define the extent to which its enactments preempt state law. *Id.* (internal citations omitted). In the absence of an express preemption provision, federal law may implicitly preempt state law. *See Crosby*, 530 U.S. at 372; *Freightliner Corp. v. Myrick*, 514 U.S. 208, 287 (1995). Specifically, in field preemption, state law is preempted if it regulates conduct in a field that Congress intended federal law to occupy exclusively, which may be inferred if the "scheme of federal regulation [is] so pervasive as to make reasonable the inference that Congress left no room for the States to supplement it," or in a field "in which the federal interest is so dominant that the federal system will be assumed to preclude enforcement of state laws on the same subject." *Id.* at 79 (internal citations omitted). The Supreme Court has emphasized that if Congress has legislated in "a field which the States have traditionally occupied," courts "must start with the assumption that the historic police powers of the States were not to be superseded unless that was the clear and manifest purpose of Congress." *Medtronic*, 518 U.S. at 484; *see English*, 496 U.S. at 79 (internal citations omitted). Finally, in conflict preemption, state law is preempted "to the extent that it actually conflicts with federal law," making compliance with both federal and state law impossible, or where it "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *English*, 496 U.S. at 79 (internal citations omitted); *see Crosby*, 530 U.S. at 373 (internal citations omitted).

If Congress includes an express preemption provision in a statute, the inclusion of this provision "implies—i.e., supports a reasonable inference—that Congress did not intend to pre[]empt other matters" beyond the provision's reach. *Freightliner Corp.*, 514 U.S. at 288. An express preemption provision, however, does not "entirely foreclose[] any possibility of implied pre[]emption." *Id.*; *see Geier v. Am. Honda Motor Co., Inc.*, 529 U.S. 861, 869 (2000).

   1.     FDCA's Express Preemption Provision

Defendant argues that Plaintiff's state law name and label claims under California's Unfair Competition Law and False Advertising Law are preempted by the Food, Drug, and Cosmetics Act ("FDCA"). (Mem. P. & A. 13-18.) Because the FDCA contains an express preemption provision, passed as part of the Nutrition Labeling and Education Act of 1990 ("NLEA"), the Court must first

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

CASE NO.: <u>CV 09-06309 SJO (JPRx)</u>          DATE: <u>July 6, 2015</u>

focus on the "plain wording of the clause" to identify the "domain expressly preempted" by the language of the statute. *See Sprietsma v. Marine*, 537 U.S. 51, 62–63 (2002); *Medtronic, Inc.*, 518 U.S. at 484; *In re Farm Raised Salmon Cases*, 175 P.3d 1170, 1085 (2008) (internal citations omitted); *see also* Nutrition Labeling and Education Act of 1990, Pub. L. No. 101-535, 104 Stat. 2353 (1990). This express preemption provision, Section 403A of the FDCA or 21 U.S.C. § 343-1, provides that "no State or political subdivision of a State may directly or indirectly establish under any authority or continue in effect as to any food in interstate commerce . . . any requirement for the labeling of food of the type required by" various sections of the FDCA, including section 343(f), 343(i)(1), and 343(i)(2), which may be relevant in this case, "that is not identical to the requirement of such section . . . ." 21 U.S.C. § 343-1(a)(2), (3); *In re Farm Raised Salmon Cases*, 175 P.3d at 1086 (internal citations omitted). For the purposes of this section, "'not identical to' . . . means that the State requirement directly or indirectly imposes obligations or contains provisions concerning the composition or labeling of food, or concerning a food container, that: (i) Are not imposed by or contained in the applicable provision (including any implementing regulation) . . . or (ii) Differ from those specifically imposed by or contained in the applicable provision (including any implementing regulation) . . . ." 21 C.F.R. § 100.1(c)(4).

    2.    <u>Identical Obligations</u>

Under this statutory framework, state law that imposes obligations that are "not identical to" those imposed by the FDCA and by FDA's implementing regulation for the relevant sections are expressly preempted. *See* 21 U.S.C. § 343-1(a)(2), (3). The parties disagree regarding whether the obligations imposed by state law are identical to those imposed by the FDCA. Defendant argues that the labeling rules that Plaintiff argues should apply here have not been adopted by the FDA, and thus any resulting violation of state law could not possibly constitute "identical" obligations to the FDCA. (Mem. P. & A. 14-15.) Plaintiff responds that both Federal and California law proscribe statements that are "false or misleading in any particular," and because this requirement is identical in both state and federal law, Plaintiff's state law claims are not preempted. (Opp'n 9-10.)

Plaintiff cites *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753 (9th Cir. 2015), in support of her arguments that the FDCA does not preempt state causes of action predicated on the federal proscription of statements that are false or misleading in any particular. (Opp'n 9.) *Astiana* allowed states to regulate the labeling of cosmetics as "all natural" despite the FDCA's provision that cosmetics are misbranded if their "labeling is false or misleading in any particular." 21 U.S.C. § 362(a); *Astiana*, 783 F.3d at 757. A separate provision of the FDCA also deems food misbranded if "its labeling is false or misleading in any particular." 21 U.S.C. § 343(a). In Plaintiff's view, this provision saves all state law claims for misleading labeling from preemption by the FDCA.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

CASE NO.:  **CV 09-06309 SJO (JPRx)**          DATE:  **July 6, 2015**

Defendant argues that there is an important distinction between this case and *Astiana.* (Reply 1-3.) In *Astiana,* the FDA did not have any specific regulations concerning the labeling of cosmetics as "natural." 783 F.3d at 758. Here, however, the FDA has promulgated very specific regulations regarding the labeling of fruit juice-containing beverages. *See* 21 C.F.R. § 102.33. Defendant argues that this far more specific regulation of the labeling of the components of juice blends causes preemption.

*Astiana* concerns a different section of the FDCA with identical language and therefore is not directly on point, but the Court nonetheless finds it persuasive. While there are specific regulations regarding the labeling of juice-containing beverages, these regulations operate in addition to, rather than in place of, the FDCA's prohibition of misleading labeling. *See* 21 U.S.C. 343(a). As discussed below, *Astiana* is in accord with a line of district court cases finding that state law restrictions on misleading juice labeling are not preempted.

This Court previously held in a related case that challenges to the labeling of Coca-Cola's pomegranate-blueberry flavored juice drinks under California law are expressly preempted by the FDCA "to the extent they seek to impose any obligations that are not identical to" the FDCA and the FDA's implementing regulations. *See Pom Wonderful LLC v. Coca Cola Co.*, No. CV 08-06237 SJO, 2009 WL 7050005, at *6 (C.D. Cal. Feb. 10, 2009), *vacated on other grounds*, 679 F.3d 1170 (9th Cir. 2012), *rev'd on other grounds*, 134 S. Ct. 2228 (2014). Since that decision, there have since been numerous district court decisions rejecting similar express preemption defenses, finding that obligations imposed by state law are consistent with 21 U.S.C. § 343(a). *See Pom Wonderful v. Ocean Spray Cranberries, Inc.*, 642 F. Supp. 2d 1112, 1119 (C.D. Cal. 2009); *Zupnik v. Tropicana Prods., Inc.*, No. CV 09-6130 DSF, 2010 WL 6090604 (C.D. Cal. Feb. 1, 2010); *POM Wonderful v. Welch Food, Inc.*, No. CV 09-567 AHM, 2009 WL 9524156 (C.D. Cal. June 23, 2009); *Chavez v. Blue Sky Natural Beverage Co.*, 268 F.R.D. 365 (N.D. Cal. 2010). Further, the Supreme Court's later opinion in *Pom Wonderful*, though addressing the issue of preclusion rather than preemption, explicitly rejected the "[assumption] that the FDCA and its regulations are at least in some circumstances a ceiling on the regulation of food and beverage labeling." 134 S. Ct. at 2240. The Court has been persuaded by these subsequent decisions that the FDCA's ban on labels that are "false or misleading in any particular" is broad enough that the state laws at issue here are not preempted. *See* 21 U.S.C. § 343(a).

Defendant is not required by FDA rules to use its fruit imagery and fruit vignettes on its labeling. (*See* Opp'n 9.) Nor is it clear that the use of fruit vignettes on labeling is explicitly allowed by FDA regulations. The FDA has stated that it believes "that a vignette that pictures only some of the fruit or vegetables in the beverage would not be misleading where the name of the food adequately and appropriately describes the contribution of the pictured juice." 58 Fed. Reg. 2897, at 2921. This, however, is followed with a caveat: "[I]n order for a beverage label to not be misleading, it is necessary that the vignette and other label statements on the beverage not conflict in any way. The agency has discussed above the circumstances under which the name of the beverage may

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

CASE NO.: CV 09-06309 SJO (JPRx)          DATE: July 6, 2015

be misleading. It will determine on a case-by-case basis whether a vignette is misleading because it is not consistent with other label information or for other reasons." 58 Fed. Reg. at 2922. With these rules, the FDA has reserved the right to find a vignette misleading "for other reasons." *Id*. Thus, the FDA's findings do not necessarily constitute "a standard with the force of law that would foreclose the public protections under state law food labeling and false advertising claims." *See Reid v. Johnson & Johnson*, 780 F.3d 952, 965 (9th Cir. 2015). While the FDA has statutory power to issue exemptions, *see* 21 U.S.C. § 343(i)(2), Defendant has not shown that an exemption has been established in the present case.

The Court is aware of a recent decision from the Northern District of Florida holding that any state law "requirement . . . to change the vignette" on a pomegranate-blueberry flavored juice drink is expressly preempted by the FDCA. *Bell v. Campbell Soup Co.*, No. 4:14CV291-RH/CAS, 2014 WL 6997611, at *4 (N.D. Fla. Dec. 11, 2014). The decision in *Bell*, however, never mentioned section 343(a) or the FDA's finding that a vignette could be found misleading for other reasons. Further, another recent case from the Northern District of Florida distinguished *Bell* where, as Plaintiff argues here, the labeling of the product was inaccurate and not explicitly authorized by regulations. *See Reynolds v. Wal-Mart Stores, Inc.*, No. 4:14CV381-MW/CAS, 2015 WL 1879615, at *5 (N.D. Fla. Apr. 23, 2015). The court in *Reynolds* found no preemption. *Id.*

The Court also acknowledges a decision from this District which stated in dicta that "[s]ection 343(a) may state that a food is misbranded if its label is false and misleading in any way, but it is but a part of a larger statutory scheme that must be construed, to the extent possible, to give effect to all of its provisions." *Gorenstein v. Ocean Spray Cranberries, Inc.*, No. CV 09-5925 GAF, 2010 WL 10838229, *1 (C.D. Cal. Jan. 29, 2010). That decision denied reconsideration of a prior order, *Gorenstein v. Ocean Spray Cranberries, Inc.*, No. CV 09-5925-GAF, 2009 WL 10201128, at *3 (C.D. Cal. Dec. 18, 2009), which did not address section 343(a) but rather explicitly followed this Court's prior decision in *POM Wonderful*. As this Court has changed its mind since that decision in light of other recent case law, particularly in regard to section 343(a), this Court declines to follow *Gorenstein*. Accordingly, Defendant's Motion is **DENIED** with respect to the FAL and UCL claims against the Juice's labeling.

      2.      <u>Safe Harbor as to UCL Claim</u>

Defendant argues that California's safe harbor doctrine bars Plaintiff's UCL claim because the conduct at issue is affirmatively authorized by statute. (Mem. P. & A. 17.) The safe harbor doctrine "simply holds that a plaintiff may not bring an action under [California Business and Professions Code § 17200 that] challeng[es] business practices specifically permitted by other statutes." *McKell v. Wash. Mut., Inc.*., 142 Cal. App. 4th 1457, 1474 (Cal. Ct. App. Sept. 18, 2006). Specifically, the safe harbor doctrine provides that "[i]f the Legislature has permitted certain conduct or considered a situation and concluded no action should lie, courts may not override that determination." *Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 973 P.2d

527, 541 (1999). For the safe harbor doctrine to apply, the legislation must "actually 'bar' the action or clearly permit the conduct." Id. In other words, "courts may not use the unfair competition law to condemn actions the Legislature permits. Conversely, the Legislature's mere failure to prohibit an activity does not prevent a court from finding it unfair." Id. at 542.

To the extent the safe harbor doctrine applied in this case, it would only bar Plaintiff's claim for statutory unfair competition under California Business and Professions Code § 17200 with respect to "business practices specifically permitted" or conduct "clearly permit[ted]" by the FDCA. See Cel-Tech, 973 P.2d at 541; McKell, 142 Cal. App. 4th at 1474. As discussed above, it is not clear that Plaintiff's labeling is explicitly permitted by FDA regulations. Rather, the FDA "will determine on a case-by-case basis whether a vignette is misleading because it is not consistent with other label information or for other reasons." 58 Fed. Reg. at 2922. Accordingly, the safe harbor does not apply. Defendant's Motion is **DENIED** with regard to this safe harbor argument.

    C.    <u>Standing</u>

        1.    <u>Ads Not Seen By Plaintiff</u>

Defendant argues that because Plaintiff was exposed only to one television commercial and one in-store display, Plaintiff does not have standing to challenge other advertisements. (Mem. P. & A. 18.) Plaintiff responds that Defendant's campaign as a whole, not just any particular advertisements, is a deceptive business practice under the UCL. (Opp'n 17-18.)

Defendant cites Sanders v. Apple Inc., 673 F. Supp. 2d 978, 991 (N.D. Cal. 2009), which held that purchasers of a product who had not seen any ads or were not deceived by ads lacked standing. This case, however, is distinguishable from Sanders on the basis that Plaintiff did in fact see ads. (See SSUF ¶ 23.) Here, Plaintiff saw some, but not all, of the ads in Defendant's marketing campaign. (See SSUF ¶¶ 25-29.) "[A] plaintiff must plead and prove actual reliance to satisfy the standing requirement of section 17204 but . . . is not required to necessarily plead and prove individualized reliance on specific misrepresentations or false statements where . . . those misrepresentations and false statements were part of an extensive and long term advertising campaign."[2] In re Tobacco II Cases, 46 Cal. 4th 298, 328 (2009).

---

[2] Defendant argues that this holding only applies at the pleading stage. (Reply 3-4.) However, the Supreme Court of California was clear that "a plaintiff . . . is not required to necessarily plead **and prove** individual reliance" on each ad. In re Tobacco II Cases, 46 Cal. 4th at 328 (emphasis added). The Court finds no requirement that Plaintiff prove reliance on every individual ad at the summary judgment stage.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

CASE NO.: **CV 09-06309 SJO (JPRx)**  DATE: **July 6, 2015**

Here, it is undisputed that the product launch for the Juice was supported with "a fully integrated marketing program that includes national print and television advertising, point-of-purchase displays, an interactive Web site, public relations and national in-store sampling programs." (SUFR ¶ 48.) The Juice was marketed over a period of many years. (SSUF ¶¶ 1, 3.) Thus, the fact that Plaintiff only saw a subset of all the ads for the Juice does not affect Plaintiff's standing to sue.

      2.      Reliance on Advertisements

Defendant also argues that Plaintiff has not shown reliance on the advertisements, since the only features she noticed and relied on were FDA-authorized aspects of the Juice's label. (Mem. P. & A. 18-19; Reply 4-5.) A misrepresentation need not "be the sole or even the predominant or decisive factor influencing" Plaintiff's conduct. *Tobacco II*, 46 Cal. 4th at 326 (citation omitted). A plaintiff does not "need to demonstrate individualized reliance on specific misrepresentations to satisfy the reliance requirement." *Id.* at 327. Accordingly, the Court finds even though Plaintiff may have relied only on aspects of the advertisements that were also reflected by the labeling of the product, this would still constitute reliance on the advertisements.

Defendant also cites Plaintiff's testimony that she purchased the juice due to "the label on the product." (Reply 5; Decl. of Steven Zalesin ("Zalesin Decl.") Ex. 1 176, ECF No. 154-4.) Plaintiff, however, also testified that she "heard it first from the TV and then" went to purchase the Juice. (Zalesin Decl. Ex. 1 176.) This testimony at minimum raises a genuine dispute of material fact concerning whether Plaintiff relied on the advertisements in purchasing the Juice. Accordingly, the Court **DENIES** Defendant's Motion as to standing.

     D.     Preemption and Safe Harbor as to Advertising

Defendant argues that Plaintiff's other claims are barred by the safe harbor doctrine since they comply with FDA regulations. (Mem. P. & A. 19-20.) Defendant claims that courts view a challenge to an ad that merely repeats information contained on the label as a challenge to the label itself. (Reply 4.)

The Court rejected Defendant's arguments as to the labeling claims above. However, even if Plaintiff's labeling claims were in fact preempted or barred by the safe harbor doctrine, it would not extend to the advertising claims. As this Court held in *Pom Wonderful*, "targeted FDA juice-naming and labeling regulations . . . do not bar [plaintiff] from showing that Coca Cola has otherwise advertised and marketed its product in a misleading manner that leads consumers to believe that the primary ingredients are pomegranate and blueberry." *Pom Wonderful*, 2009 WL 7050005 at *4.

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

___ : ___

CASE NO.: <u>CV 09-06309 SJO (JPRx)</u>   DATE: <u>July 6, 2015</u>


Defendant cites *Andrus v. AgrEvo USA Co.*, 178 F.3d 395 (5th Cir. 1999) and *Taylor AG Indus. v. Pure-Gro*, 54 F.3d 555 (9th Cir. 1999) in support of its claim. These cases are inapposite. *Andrus* dealt with a different law, the Federal Insecticide, Fungicide, and Rodenticide Act ("FIFRA"), holding that the claim was preempted because the label on the herbicide at issue had been explicitly approved by the Federal government. 178 F.3d at 400. *Taylor AG* dealt with a similar FIFRA preemption claim. 54 F.3d at 561. Here, the label has not been specifically approved by the government. Accordingly, Defendant's Motion is **DENIED** as to Plaintiff's advertising claims.

III.     <u>RULING</u>

For the foregoing reasons, the Court **DENIES** Defendant's Motion for Summary Judgment.

IT IS SO ORDERED.